[No. 4110.   Decided October 3, 1902.]

AMERICAN COPPER, BRASS & IRON WORKS, *Respondent*,
v. GALLAND-BURKE BREWING & MALTING COMPANY,
*Appellant*.

SALES — TIME FOR PERFORMANCE OF CONTRACT — EXTENSION — EVIDENCE.

In an action for the price of goods shipped by plaintiff to defendant, in which the plaintiff sought to establish a waiver of an agreement for liquidated damages for any delay in shipment, evidence that a stockholder of defendant, who was temporarily in plaintiff's city on other business, had expressly agreed to an extension of time for shipment is admissible, when letters of defendant, though subsequent in date to the alleged agreement for extension, carry the inference that such stockholder was defendant's authorized agent for the purpose.

BILL OF PARTICULARS — ADMISSIBILITY IN EVIDENCE.

A bill of particulars furnished by plaintiff in response to a motion by defendant is admissible in evidence on the part of defendant, although no order against plaintiff to furnish the bill is shown by the record as ever having been made.

SAME — HEARING OF EVIDENCE.

Conversations had by plaintiff with a former employee of defendant tending to show that defendant suffered no actual dam-

age by reason of plaintiff's delay in furnishing goods contracted to be delivered at a stipulated time under penalty of liquidated damages, are inadmissible on the ground of being hearsay.

LIQUIDATED DAMAGES — SHOWING OF ACTUAL DAMAGE UNNECESSARY.

Under a contract providing for liquidated damages, it is not necessary to show in what manner or to what extent the party claiming thereunder has been actually damaged, but upon establishing a breach of the condition entitling him to such damages he should be awarded the stipulated sum.

PLEADING — ADMISSIONS IN ANSWER.

Where the complaint set up a written contract between the parties, and followed this with allegations of other matters which it averred were actually a part of the contract, but omitted by mistake, and the admission of the answer was merely that "the contract set forth in said complaint is a true copy of the contract between the parties hereto," and the case was tried on the theory that defendant admitted nothing outside of the written contract, it was error for the court to charge the jury that defendant admitted by its answer that the contract was as alleged in the complaint.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge.     Reversed.

*W. J. Thayer,* for appellant.

*Forster & Wakefield* and *James W. Marshall,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by respondent against appellant to recover a balance alleged to be due on a contract for furnishing certain equipments for a brewery then being constructed by the appellant.     The contract was executed in writing and the provisions thereof material to be stated here were as follows:

"The American Copper, Brass & Iron Works agree to construct and build and deliver not later than the 1st of January, 1892, f. o. b. cars at Chicago, the following brewing equipments for the said Galland-Burke B. & M. Co. of

the size and quality of material and for the agreed price
hereinafter stated, viz.:    (Here follows a description of
material.)   All of said equipment to be furnished f. o. b.
cars at Chicago for the sum of $5,800 (five thousand eight
hundred dollars), which sum the said Galland-Burke B. &
M. Co. agree to pay for same, if up to specifications and
contract and delivery made not later than Jan. 1, 1902.
If later, then the said American C. B. & Iron Works are to
deduct from said amount account of inconvenience, direct
damage done to said G.-B. B. & M. Co. and as liquidated
damages, the sum of $25.00 per day for each and every day
that delivery is made f. o. b. later than said 1st Jany.,
1902."

The written contract is set out *in haec verba* in the com-
plaint, and it is alleged that it was further agreed between
the parties, at the time the contract was entered into, that
the respondent should ascertain freight rates on the brew-
ing equipment, and advise appellant, who was to decide and
direct respondent whether to ship the equipment as a whole
or "knocked down," and that appellant also then and there
agreed that the penalty claims would not be enforced ex-
cept in the most extreme case of neglect; that said last
mentioned stipulations were made a part of the contract,
but by oversight or mistake were not included in the writ-
ten contract.    It is further alleged that pursuant to the
agreement appellant was notified by respondent concerning
the freight rates, but that appellant failed to advise or
direct respondent how to ship, and thereby occasioned delay
in the delivery of the equipment.    It is also alleged that
appellant extended the time in which the goods were to be
delivered, and that respondent did not deliver the equip-
ment by January 1, 1892, because of said extension of
time, as well as because of the failure on the part of appel-
lant to advise as to shipment; but that, as soon as respond-
ent was directed as to the shipment, it complied with its
part of the contract in every particular.    The answer ad-

mits that the contract set forth in the complaint is a true copy of the contract between the parties, and avers that by the terms thereof, if delivery of said goods was made after January 1, 1892, there should be deducted by respondent from the contract price the sum of $25 per day, as liquidated damages for each and every day that delivery was made f. o. b. later than said date; that respondent did not make such delivery on or before said date, but delayed the same until sixty days after said date, to the great inconvenience and damage of appellant in the sum of $1,500, which sum it asks shall be set off against the claim of respondent, and that appellant shall recover judgment against respondent. The allegations of the answer are denied by the reply. The cause was tried before a jury, and resulted in a verdict for the respondent in the sum of $870.    Appellant moved for a new trial, which was denied, and judgment was thereafter entered in accordance with the verdict of the jury.

It is assigned as error that the court permitted the witness Meinshausen, who was president of the respondent company, to testify as to the alleged statements made by Mr. Sam. Galland in relation to the shipping of the goods, it being claimed by appellant that Sam. Galland had no connection with its company, except that he owned some of its stock.    The witness Meinshausen testified, in effect, that Sam. Galland waived for the appellant company the stipulation in the written contract that the goods were to be delivered on or before January 1, 1892.    The respondent company and its manufacturing plant were located in Chicago, and the appellant company had ordered this brewing equipment to be manufactured for shipment to Spokane, to be used in appellant's brewery, then being constructed in Spokane.    Sam. Galland went to Chicago, arriving there soon after January 1, 1892.    He says he went there to be educated as a brewmaster.    Whatever may

have been the primary purpose in going to Chicago, it nevertheless appears that while there he called at the respondent's place of business, and had some conversation with the officers of respondent company relative to the shipment of this brewing outfit. The witness Meinshausen testified that, when Sam. Galland called at the respondent's place of business, "we showed him these things, and everything was all ready, and he says: 'We are not ready. You can keep it as long as you want to. I will let you know when to ship it.' " Objection was made to the statement of any conversation between the witness and Sam. Galland until it was first shown that the latter had some authority to bind the appellant company. On the statement of respondent's counsel that they had a letter from appellant company which would show such authority, the court observed as follows: "If you propose to introduce a letter of that kind in evidence, I will not require you to withdraw the witness now and show that first; but it is incompetent testimony unless that is shown. I will overrule the objection now." The witness then proceeded to give testimony similar to that already mentioned, and also to the effect that under the instructions of Sam. Galland respondent proceeded to put the equipment together, so that it could be shipped "set up" ready to be put in place upon its arrival in Spokane; and that he so requested in order that the expense of sending men to Spokane to erect it might be avoided—all of which witness claimed was to the delay of respondent. Appellant urges that the letter showing authority from it to Sam. Galland, and to which counsel and court had theretofore referred, was never produced, and that the testimony of the witness should, therefore, not have been permitted to go to the jury under the trial court's own ruling. A letter was, however, produced, signed by the appellant company, and

directed to the respondent company, dated February 22, 1892, which was probably six weeks after the alleged conversation with Sam. Galland.   This letter was in reply to one from respondent, dated the 18th of the same month, in which had been inclosed a statement of goods already said to be shipped, and which letter also advised appellant that a draft had been forwarded for one-half of the contract price.   In the appellant's reply letter is the following:   "It would not be right for us to pay the agreed amount ½ until the stuff was shipped.  On receipt of this, if you have sent kettle, Grant and cooler, why please satisfy our Sam. G. that stuff is coming forward and have him wire us and we will take care of draft."   The above mention of "Sam. G." it is not disputed refers to Sam. Galland, and being over the signature of appellant, directed to respondent, concerning the subject matter of the shipment of the goods, we think it became a question for the jury to determine whether appellant had authorized Sam. Galland to represent it to the extent of making the statements concerning which the witness Meinshausen testified.   It is true the letter was written some time after the alleged conversation, but it at least bore upon the matter of Sam. Galland's representative authority at the time it was written, and we think it was properly left with the jury to say whether authority theretofore existed.

It is next assigned that the court erred in refusing to admit in evidence, or order to be filed, a bill of particulars alleged to have been furnished by respondent. Early in the progress of the cause appellant moved the court to require respondent to furnish a bill of particulars showing on what dates respondent shipped the machinery. The motion appears among the files of the cause, but no order directing a bill of particulars to be furnished

appears in the record. Appellant produced at the trial a written statement purporting to be signed by respondent's attorneys, and which appellant claims was delivered to its counsel as a bill of particulars. No original bill of particulars appears to have been filed by respondent. At the trial appellant moved for an order requiring it to be filed. Thereupon the following occurred:

"The Court: If you show it was filed in compliance with the order of the court— Mr. Thayer: Well, I state to your honor it was, and counsel do not deny the signature. Mr. Forster: I haven't any doubt but what it was properly served. I have no recollection about it at all."

The court thereupon ordered the filing of the bill of particulars, but, it subsequently appearing that no order had theretofore been made in the record, the court observed as follows: "I will sustain the objection. The record does not show there ever was an order made for a bill of particulars. I do not remember any such order." Respondent's counsel stated that they did not have the original bill of particulars in their possession, and later in the trial appellant sought to introduce in evidence the aforesaid copy of what it claimed had been served upon it as a bill of particulars. One of respondent's counsel was called to the witness stand, and, upon being shown the copy, was asked if he had ever before seen it, or the original bill of particulars. The witness having stated that he refused to answer, without stating the ground of his refusal, the following occurred:

"The Court: On the ground that whatever it is would be a communication between client and attorney? The witness: No, sir. Upon the ground that there has no order been made for a bill of particulars, and your honor ruled last Saturday that the bill of particulars, as given

by the attorney, was not competent without an order directing a bill of particulars."

On further examination the witness stated that he had no recollection whatever about it. The copy bore date January 11, 1895, which was some years before the time of the trial. The action had been pending since 1892. The purported signature of the witness to the copy was, however, not denied. The purported signature of the firm of his co-counsel was made by a rubber stamp impression, but what purported to be the witness's signature was written with pen and ink. The copy recited upon its face that it was furnished in compliance with an order of the court theretofore made. Appellant offered it in evidence, stating as grounds in support of the offer that it was given in compliance with an order of the court; that it was a bill of particulars served by respondent's attorneys, and signed by them in response to a demand. Objection was then made by respondent, and the grounds stated were that the record showed no order of court for a bill of particulars, and, further, that the signature of Forster & Wakefield was not attached to the copy. The said signature was the one already mentioned as purporting to be attached by rubber stamp. No objection was made, however, that the pen-written signature of J. W. Marshall, co-counsel of Forster & Wakefield, was not genuine. The objection was sustained, it being the court's view that, in the absence of an order in the record directing a bill of particulars, the offered evidence was incompetent. We think this was error under the ruling of this court in *Howells v. North American, etc., Trading Co.,* 24 Wash. 689 (64 Pac. 786). We there held that a bill of particulars voluntarily furnished upon the oral request of counsel was as binding as though furnished under the order of the court. In the case at bar we think sufficient

had appeared to form a foundation for the admission of the offered evidence. Any explanations respondent might have desired to make concerning the same could have been shown by further testimony. The offered evidence was material to appellant's theory of the case, and we therefore think it was material error to reject it.

It is assigned that the court erred in permitting the witness Pagenstacher to testify as to a conversation which he had with Mr. Meinshausen, the president of respondent company. As has already appeared, appellant claimed under the contract liquidated damages at the rate of $25 per day for each day the delivery of the machinery was delayed after January 1, 1892. The court ruled that, before appellant could recover damages under the liquidated damage provision of the contract, it must first appear that actual damage to a considerable amount had been sustained by reason of the delay in shipping the goods; and respondent sought to show that no considerable actual damage had been sustained, because it claimed that appellant's buildings at Spokane were not ready to receive the machinery on January 1st, and not until after the machinery had actually been received at Spokane. In attempting to prove that the buildings were not ready respondent introduced the deposition of said witness Pagenstacher. This witness had theretofore been in the employ of appellant, and had gone to Chicago, where he says he had a conversation with Meinshausen. He was asked what he said to him about the progress of the work upon appellant's brewery buildings in Spokane. Objection was made to the question on the ground that it called for hearsay testimony, and that any statements the witness might have made at that time upon that subject would not be binding upon appellant. The objection was, however, overruled, and the witness was permitted to tes-

tify that he told Meinshausen that the buildings were up
to the third story, but that they were not ready to receive
the machinery. It appears that this witness had at one
time acted as superintendent of the construction of the
brewery but had no other connection with appellant than
as an employee. At the time of said conversation he
was not even in appellant's employ, and there was no
showing that he had any authority to speak for appellant.
Under these circumstances we think the evidence was
purely hearsay, and that it was error to admit it.

It is assigned that the court erred in instructing the
jury to the effect that, before appellant would be entitled
to a deduction of $25 per day, claimed as stipulated dam-
ages under the contract, they must find that respondent
failed to comply with its contract, and that such failure
"did cause the defendants some material, considerable dam-
age." We think the instruction was erroneous under the is-
sues of the case. Appellant was claiming the right to re-
cover by reason of the clause in the contract providing for
stipulated damages, and the instruction had the effect to re-
quire it to prove actual damages before it could recover. It
is true, under the modified agreement alleged by respondent
it is claimed that it was agreed that liquidated damages
would not be enforced unless there was substantial actual
damage. But the alleged modified agreement was one of
the disputed questions in the case. In *Reichenbach v. Sage,*
13 Wash. 364 (43 Pac. 354, 52 Am. St. Rep. 51), this
court held that a provision in a building contract for the
recovery by the owner of $10 as damages for each day
the completion of the building was delayed after the time
stipulated was a provision for liquidated damages, and not
for a penalty, and could be enforced. The court at page
367 said:

"   .   .   .   there is an element of uncertainty as to the real damages which would be maintained by the plaintiff which renders it more or less impracticable to be determined by a jury.   Values of rents are fluctuating, and dwelling houses of the character and description of this one are ordinarily not built for rent at all, but for the convenience and comfort of the owners, and inasmuch as the parties saw fit to settle in advance the question of damages, and it seems to be on an equitable basis, we do not feel justified in disturbing that contract and holding that it was a contract which the parties had no right to make."

In the opinion in that case the court quoted approvingly and at length from *Dwinel v. Brown,* 54 Me. 470, a part of which quotation is as follows:

"Courts of common law cannot, like courts where the civil law prevails, award such damages as they may deem reasonable, but must allow the damages, whether actual or estimated, as agreed upon by the parties."

To the same effect is *Everett Land Co. v. Maney,* 16 Wash. 552 (48 Pac. 243).   The following cases hold that, where damages for the breach of a contract are liquidated, it is not necessary to show in what manner or to what extent the party claiming under it has been actually damaged: *Pierce v. Jung,* 10 Wis. 30; *Kelso v. Reid,* 145 Pa. St. 606 (23 Atl. 323); *Sanford v. First National Bank,* 94 Iowa, 680 (63 N. W. 459); *Spicer v. Hoop,* 51 Ind. 365.

It is last assigned that the court erred in instructing the jury that appellant, by its answer, admitted the contract to be as alleged in the complaint.   It will be remembered that the written contract was first set out in full in the complaint, and this was followed by allegations of other matters, which it is averred were actually made a part of the contract, but were omitted from the written agreement by oversight or mistake.   The answer first generally denies all the allegations of the complaint "save

and except such as are herein specifically admitted," and then proceeds as follows:

"The defendant admits the allegations as to the corporate character of the parties hereto, and that the contract set forth in said complaint is a true copy of the contract between the parties hereto, excepting that the contract is not signed on behalf of the American Copper, Brass & Iron Works by the person named in said complaint."

It seems manifest to us that the pleader did not intend to admit any portion of the contract alleged in the complaint, except what is referred to as "a true copy," etc., evidently meaning the *written* contract copied in the complaint. The whole case was tried on the theory that appellant did not admit the allegations of the complaint as to provisions in the contract not included in the written one. We therefore think it was error to instruct the jury that the contract as set out in the complaint was admitted, since they may have been misled thereby.

For the foregoing reasons, we think a new trial must be granted. The judgment is reversed, and the cause remanded, with instructions to the lower court to grant a new trial.

REAVIS, C. J., and FULLERTON, ANDERS, MOUNT, WHITE and DUNBAR, JJ., concur.