[No. 23168. Department One. January 20, 1932.]

JOHN B. POWER, *Appellant*, v. STEPHEN F. CHADWICK, *as Receiver of Fraser, Goodwin & Colver, Respondent.*[1]

[1]Reported in 7 P. (2d) 24.

*Nelson R. Anderson,* for appellant.

*Caldwell & Lycette* and *Dean H. Eastman,* for respondent.

HERMAN, J.—A receiver was appointed for Fraser, Goodwin & Colver, Inc. He published notice to creditors requiring them to file their claims on or before February 10, 1930.

On that date, petitioner John B. Power filed with the receiver a claim, asking for the return of ten shares Schulte Retail Stores, fifty shares National Trade Journal and twenty shares General Motors stock. Later, petitioner Power filed a petition for reclamation of his stock, claiming that he was the owner and entitled to possession of the same; that he had delivered the aforementioned stocks to Fraser, Goodwin & Colver, Inc., for safekeeping; and that they were in the possession of the receiver, who refused to surrender them.

The receiver answered that the claim was not filed in time; that the receiver was authorized to sell the stock of petitioner and credit his account with the proceeds; that petitioner was indebted to the receiver in the sum of $1,002.51; and that the stock had been deposited with the receiver as security for petitioner's indebtedness. The receiver prayed for judgment for

$1,002.51, and for an order of sale to satisfy such indebtedness.

The petitioner replied, denying the affirmative allegations of the answer and the cross-petition of the receiver.

A trial in the superior court resulted in a judgment against petitioner Power in the sum of $1,002.51, directing the receiver to return the stocks to petitioner Power upon payment by him of the sum of $1,002.51, within ten days from the entry of the judgment, and authorizing the receiver to endorse the stock certificates for transfer purposes, in the event of the failure of Power to redeem the securities or endorse them for transfer. From this judgment, petitioner Power appeals.

■ Appellant claims that the ten shares of Schulte Retail Stores Common, the fifty shares of National Trade Journal, Inc., and twenty shares of General Motors were left with Fraser, Goodwin & Colver for safekeeping. The only direct testimony to support respondent's contention that any of those stocks were left as collateral was given by E. C. Goodwin, otherwise known as "Buzz," vice-president of Fraser, Goodwin & Colver during the time of the transactions which are the subject of this litigation. Mr. Goodwin testified as follows:

"Q. Now, you had a conversation with him with respect to all the stocks that were left there? A. The National Trade Journal was the only stock that was mentioned, that I suggested to him to bring it in to leave as collateral. Q. Subsequent to that conversation the stock was brought to the office? A. Yes. Q. Do you recall of having any conversation at that time or at any subsequent time with respect to any other stocks of his? A. No. . . . Q. The National Trade Journal stock was never endorsed over to you, was it? A. No, sir. Q. Nor any other stock? A. No, sir. Q.

Nor did you ever get any separate assignment of that stock? A. No.''

Both Mr. Power and Mr. Goodwin agreed in their testimony that Mr. Power was able at any time to take up and pay for any stock purchased for him by Fraser, Goodwin & Colver. When Power left his stock with the corporation, he received for it a receipt in the following words:

''Fraser, Goodwin & Colver, Inc.,        No. 650.
''Investment Counsel, Douglas Building,
''Seattle, Washington, 5/16, 1929.
''Received from Mr. John Power 10- Sh. Schulte Retail Stores Common, Cert. No. 087079; for 50-Sh. National Trade Journal, Inc., Cert. No. T.O.-1569. To be held for his account.
                 ''Fraser, Goodwin & Colver,
                     ''By H. Kleen.''

This document constitutes an ordinary receipt. It does not purport to be a pledge or any form of collateral agreement. It is a matter of common knowledge that bankers and brokers have forms of collateral notes and collateral agreements, and employ them when accepting stocks or bonds as collateral. Appellant Power was not dealing with ignorant people who would be presumed to express their intention in loose or indefinite language; he was dealing with men who represented themselves as ''Investment Counsel.'' Fraser, Goodwin & Colver, Inc., had such extensive experience in pledging collateral that, a few months after this transaction, when a receiver was appointed, it had pledged collateral with and was indebted to E. A. Pierce & Company in the sum of $331,771.50, to Solomon Brothers & Hutzler in the sum of $338,892.18, and the Canadian Bank of Commerce in the sum of $84,500.

Not only does the receipt indicate that the stock was

not left as collateral, but the conduct of the corporation and Power, subsequent to the transaction when the receipt was given, shows that the stock was left for safekeeping. After giving the receipt, the corporation wrote to Power and asked him to endorse the stock and execute two blank assignments on forms enclosed. This, appellant then refused to do, and ever since has continued to so refuse. His testimony relative to the transaction was as follows:

"A. . . . I put them down there purely and simply because I asked 'Buzz'—I said, 'If we want to sell one of these now, what is the procedure? He says, 'Well, we have to have the stock delivered back to New York properly endorsed to be sold back there.' I said, 'All right.' It would have been very inconvenient for me to have got any stock that he wanted to sell from safekeeping. My residence at that time was out in the university district. 'You keep them for me, and if you want to sell them, I will drop in and sign them, and away they go.' Q. Was anything said to you at that time that those were to be held as collateral for your account? A. No, No."

The evidence in this case clearly preponderates against respondent's theory that the stocks were left as collateral by Mr. Power, and we must find that he left them with Fraser, Goodwin & Colver merely for safekeeping. The corporation was, therefore, acting as trustee in holding Schulte Retail Stores, National Trade Journal, and General Motors stocks.

Fraser, Goodwin & Colver, Inc., having accepted Power's stock for safekeeping, the receiver would have no greater or better rights to the stock than did the insolvent corporation. In *Sumner Iron Works v. Wolten*, 61 Wash. 689, 112 Pac. 1109, the court held:

"The receiver could obtain no better or different title or claim to the machinery than the insolvent lumber company. Its rights were his rights; no more, no less. The adjudication of the insolvency of the lumber

company and the appointment of a receiver in no wise established any lien upon this machinery.''

Speaking of the rights of receivers relative to property acquired in connection with an insolvent corporation, in *Moore v. American Savings Bank & Trust Co.,* 111 Wash. 148, 189 Pac. 1010, the court said:

''The insolvency of the bank and the taking possession by the examiner could not destroy nor affect this lien. He would take possession of the bank subject to all equities and rights existing in any one else. In 34 Cyc. at page 193, it is said:

'' 'The general rule is that a receiver takes the property of which he has been appointed in the same plight and condition and subject to the same equities and liens as he finds it in the hands of the person or corporation out of whose possession it is taken.'

''In 23 R. C. L., at page 56, it is said:

'' 'A receiver holds the property coming into his hands by the same right and title as the person for whose property he is receiver, subject to liens, priorities, and equities existing at the time of his appointment. He becomes merely the assignee of the insolvent, and has exactly the same rights.' ''

We hold that, appellant Power having left the National Trade Journal, Schulte Retail Stores, and General Motors stocks with Fraser, Goodwin & Colver, Inc., for purposes of safekeeping, and not as collateral, it is the duty of the receiver to deliver those stocks to appellant, without the payment by Power of any money to the receiver.

Respondent contends that, because an order was entered March 8, 1930, upon the ''second and supplemental report of receiver,'' requiring the receiver to deliver to appellant the stock left with Fraser, Goodwin & Colver, Inc., upon payment by Power of $1,-002.51, and a copy thereof was thereafter served upon appellant, the order constituted a judgment between

the receiver and Power, and the latter's remedy, if any, was by appeal from that order.

On the 7th day of December, 1929, the receiver filed in the office of the county clerk of King county, Washington, a document entitled, "second and supplemental report of receiver, and application for instructions." This instrument contained the following prayer:

"(1) That this report and petition for instructions be set down for hearing, and that the court fix a time for hearing and notice thereof, so that all persons affected or interested therein may appear, and that upon such hearing your receiver's report be in all respects confirmed and approved.

"(2) That the court direct that notice to creditors be given and designate the manner and time thereof, and fix the time within which claims shall be presented, as the court may seem just and proper.

"(3) That a suitable appraiser or appraisers be appointed to appraise the assets of the defendant corporation, except the office furniture and equipment heretofore appraised pursuant to order of court, and that your receiver be instructed as to the disposition of such assets, and particularly as to the stocks, bonds and other securities included therein.

"(4) That your receiver be authorized and permitted to incur the expense of mailing out to the various customers of the defendant statements of their accounts as shown by the books of Fraser, Goodwin & Colver, and claim blanks for making their claim therefor.

"(5) That the sale of office furniture and equipment heretofore made by your receiver be by the court approved and confirmed and that the disbursements made by your receiver in the administration of his trust, be allowed and approved.

"(6) That your receiver be instructed as to the disposition of those securities now in his possession, which securities belong to various customers and not subject to re-pledge, but which were reported to your receiver as having been inadvertently repledged, and

have been returned by said re-pledgees to your receiver since his appointment.

"(7) That the court fix a time for the hearing of such claims to priority or preference as customers and creditors may assert.

"(8) That your receiver be instructed as to the disposition of those securities belonging to marginal trading customers, which securities have been returned by the re-pledgees unsold in the liquidation by said re-pledgees, and those securities of such customers deposited with the defendant corporation but not re-pledged and now in the possession of your receiver.

"(9) That an allowance be made at this time upon the account of your receiver and his counsel herein, and that the court give such further instructions to your receiver as shall to the court seem proper in the premises."

Thereafter, the receiver caused to be published a notice, in accordance with the order of the court and at the time indicated by the court, which, omitting the title and formal matter, was as follows:

"Notice is hereby given that Stephen F. Chadwick, the duly appointed, qualified and acting receiver of Fraser, Goodwin & Colver, a corporation, the above named defendant, has filed in the above entitled court his second and supplemental report of receiver and petition for instructions; that, pursuant to order of the court entered on the 9th day of December, 1929, hearing on said report and petition will be had on Monday, the 13th day of January, 1930, at 9:30 o'clock A. M. of said day, in department No. 10 of said court; at which time all persons affected thereby or interested therein may appear and be heard thereon."

The notice was dated December 9, 1929, and signed by the receiver and his attorneys.

On the same day, there was published, in accordance with the order of the court, a notice to creditors, bearing the same date as the foregoing notice of hearing, requiring all creditors to present their claims to the receiver on or before February 10, 1930.

On the 10th day of February, 1930, appellant Power's attorney, Nelson R. Anderson, presented his claim to the receiver, asking for the return of the stocks left by Power.

On the 8th day of March, 1930, the court signed and there was filed an instrument entitled, "order directing receiver to deliver securities." This order contains the following preliminary recitals pertinent to its effect, if any, upon the appellant:

"This matter coming on regularly for hearing upon the second and supplemental report of the receiver and application for instructions, *and upon the claim of various of the customers of the defendant corporation filed herein, for the return to said claimants of the securities hereinafter described,* which securities came into the possession of the receiver herein at the time of his appointment; Stephen F. Chadwick, the receiver herein, appearing in person and by his attorneys, Caldwell & Lycette, and various of the claimants appearing in person or by attorney, and testimony having been introduced on behalf of said receiver *and said claimants* and the court having heard and considered the same, and having heard and considered the argument of counsel, and the receiver by and through his attorneys in open court having recommended the return of said securities to said customers, and no one appearing in opposition to such recommendation; . . . and the court being otherwise fully advised in the premises, now, therefore, . . ."

A perusal of the preliminary recitals of the order entered March 8, 1930, above set forth, shows there is nothing to indicate that the report upon which it is based came on for hearing January 13, 1930, the date fixed by the order of the court for such hearing. There is nothing in the transcript or in either of the supplemental transcripts furnished by appellant and respondent to indicate that an order of the court was ever entered, continuing the hearing until after February 10, 1930, the time allowed creditors to file their claims;

nor is there anything in the record to show that appellant Power received notice, constructive or otherwise, that the hearing on the "second and supplemental report of receiver, and application for instructions" would be held at any particular date other than January 13, 1930.

There is nothing about the recitals contained in the order which would indicate that appellant Power waived notice and was present, either in person or by attorney, at the hearing where the order was entered, requiring him, within fifteen days from the date of the order, to pay $1,002.51 to secure the return of stock which he had left with the corporation for safekeeping, and authorizing the receiver to sell that stock if Power did not pay the $1,002.51. The fact that, pursuant to the court's direction, a copy of such order was served upon Power and others mentioned therein, in no wise adds anything to the validity of the order, if it was intended as a judgment between Power and the receiver. The statutory definition of a judgment is as follows:

"A judgment is the final determination of the rights of the parties in the action." Rem. Comp. Stat., § 404.

We hold according to appellant's contention, that the order entered by the trial court was not a judgment between the parties, as defined by the section of the statute above quoted, but merely an order instructing the receiver as to the procedure to follow, entered upon the assumption that the facts set forth in his report were correct, and not determinative of the rights of all persons mentioned in the order, regardless of the true facts. This order, entered by the trial court March 8, 1930, is what is contemplated by Rem. Comp. Stat., § 405, which says:

"Every direction of a court or judge, made or entered in writing, not included in a judgment, is denominated an order."

We are compelled to hold against the contention of respondent that the order entered March 8, 1930, on the "second and supplemental report of receiver, and application for instructions" was a judgment, and that Power's remedy was by appeal from that order. Power has the right to seek recovery of his stocks by filing a petition in the receivership proceedings. *Mentzer v. Commercial Lumber Co.*, 110 Wash. 155, 188 Pac. 9.

Respondent answered Power's petition for the return of his stock, and filed a cross-petition thereto, alleging that Power maintained a trading account with Fraser, Goodwin & Colver, Inc.; that, at the time of the appointment of the receiver, Power was indebted to Fraser, Goodwin & Colver, Inc., on said account, in the sum of $1,002.51, and that the securities, the return of which appellant seeks, were held as collateral. Respondent predicates his claim of indebtedness upon the purchase by Fraser, Goodwin & Colver, Inc., of thirty shares of United National for Power, at a cost of $2,072.50. Counsel for appellant insists that such purchase is not proved by competent testimony, but Power's testimony as to the authority of the corporation to purchase the stock for him, coupled with the testimony of Mr. Goodwin that such stock was bought for Power, is competent evidence, and establishes respondent's claim that the stock was purchased.

The receiver contends that, the day after his appointment, this stock was sold for $728.20. His second supplemental report shows that Fraser, Goodwin & Colver, Inc., were indebted to Solomon Brothers & Hutzler in the sum of $338,892.18. His testimony shows that the United National stock, purchased for Power, was pledged by Fraser, Goodwin & Colver, Inc., as collateral for that corporation's account with Solomon Brothers & Hutzler, and, the day after a re-

ceiver was appointed for the corporation, the pledgee sold the stock at $24.50 per share.

The evidence in the case is convincing that Power's instructions to and agreement with Fraser, Goodwin & Colver were that, if the market for the stock fell in price, the brokers were to hold the stock, not sell at a loss, and deliver it to appellant, who would pay for the stock. Appellant so testified, and Mr. Goodwin, the former vice-president of Fraser, Goodwin & Colver, admitted this was their agreement. Notwithstanding that agreement, the stock was sold in violation thereof. Power's instructions relative to the purchase and delivery of stock were ignored, and his orders were disregarded. In *Richardson v. Shaw,* 209 U. S. 365, the court announced:

"As was said by Mr. Justice Bradley speaking for the court in *Galigher v. Jones,* 129 U. S. 193, 198, a broker is but an agent, and is bound to follow the directions of his principal or give notice that he declines the agency."

In order to maintain a suit upon a contract, a party must first show that he himself has performed the terms and conditions of the contract. The law is that a receiver is merely the assignee of the insolvent, and has exactly the same rights. In the case at bar, we are confronted with a situation not unlike that in the case of *Katz v. Nast,* 187 Fed. 529, where the court held:

"In other words, the transaction on the part of the brokers made the purchase their own, not that of the customer, and was in contravention of their contract in suit, as well pointed out in *Richardson v. Shaw, supra,* 209 U. S. 379, 28 Sup. Ct. 512, 52 L. Ed. 835, in approval of the quotation from *Skiff v. Stoddard, supra* [63 Conn. 198, 26 Atl. 874, 28 Atl. 104, 21 L. R. A. 102]."

While thirty shares of United National stock were bought by Fraser, Goodwin & Colver, Inc., and charged

to Power's account, that corporation pledged those shares with its creditor, who sold them. The corporation never followed the instructions which its vice-president admitted Power gave as part of his order to purchase. There was no compliance with Power's orders, which are clearly proven by the evidence of Mr. Goodwin, the vice-president of the brokerage corporation. His testimony was as follows:

"Q. Was your instruction not that in case it went down you were to acquire the possession of the stock, you would deliver it to him and he would pay you? A. In case it went down we were to acquire the possession of the stock, deliver it to him and he would pay for it. Q. You had no instructions that if the stock fell in price it was to be sold or disposed of by you or through you? A. No. Q. The instructions were just to the contrary, that if it went down you were to take possession of the stock, deliver it to him and he was to pay you for it? A. Yes, that was my understanding with him."

The cross-petition of the receiver, seeking to establish an indebtedness on the part of appellant Power, should have been dismissed.

Reversed and remanded, with directions to the trial court to enter an order directing the receiver to return to appellant Power the certificates of stock in Schulte Retail Stores, National Trade Journal, Inc., and General Motors, and to dismiss the receiver's cross-petition.

BEELER, PARKER, and MITCHELL, JJ., concur.

TOLMAN, C. J., dissents.