Marie SMITH, Respondent,

v.

TRANS WORLD AIRLINES, INC.,
a Corporation, Appellant.

No. 23543.

Kansas City Court of Appeals.

Missouri.

June 4, 1962.

Wm. A. Rundle Jr., F. Burck Bailey, Morrison, Hecker, Cozad & Morrison, Kansas City, for appellant.

Loomis & Lacy, J. M. Loomis, Kansas City, for respondent.

BROADDUS, Judge.

Plaintiff commenced this action by the filing of a petition for damages in the

Circuit Court of Jackson County, Missouri, at Kansas City, against defendant Trans World Airlines, Inc., praying for damages for personal injuries in the amount of $7500. The case was tried before a jury and the Honorable Ben Terte, Judge of Division No. 9 of the Circuit Court of Jackson County, Missouri. The jury returned a verdict in favor of defendant upon which judgment was entered. On May 26, 1961, plaintiff filed her motion for a new trial which was sustained as to "points 2 and 13" thereof on August 23, 1961, by the Honorable Harry A. Hall temporarily sitting as Judge of Division 9 for the purpose of hearing plaintiff's motion for a new trial during Judge Terte's absence due to illness. Defendant thereafter filed its notice of appeal to this court. The facts in brief are as follows:

On March 14, 1958, at approximately 6:55 P.M. plaintiff then 50 years of age, in company with her husband, Ray Smith, and a third party, Mr. W. A. Heller, boarded defendant's flight 143 at St. Louis, for a flight to Kansas City, Missouri. The aircraft plaintiff boarded was a Trans World Airlines Constellation. Plaintiff entered the aircraft at the rear and was met at the entranceway by a hostess. She inquired of the hostess as to where all three members of her party could find seats together and was informed that such seats could be had in the forward lounge. The forward lounge in this particular Constellation was in the foremost portion of the aircraft immediately behind the cockpit or flight deck and was separated from the main cabin by a galley or hostess working area. The forward lounge and galley were on a level 9¼ inches lower than the floor of the main cabin and divided from the main cabin by a bulkhead in the center of which is a door 22 inches wide and a step 9¼ inches high.

Plaintiff led the way forward along the main cabin aisle with no one in front of her, walking in a normal manner, with her husband, Ray Smith, immediately behind her and Mr. Heller (who did not testify in the case) behind him.

From this point the evidence of plaintiff and defendant was in direct conflict. It was plaintiff's evidence that upon reaching the door to the galley the door was closed concealing the step but she continued walking, looking straight ahead, and without breaking stride pushed the door open and fell through the door and down the step all in one motion.

As opposed to this testimony of plaintiff, one Mrs. Luther Fisher, who had been a passenger on the same flight, testified that she and her husband who was hospitalized at the time of the trial, were the first passengers to board Flight 143 that evening and that they had walked forward through the main cabin and galley to the lounge passing through the door in question and that the door was open. After reaching the lounge Mrs. Fisher testified she was still standing facing the entrance to the lounge and saw plaintiff and her party in the middle of the main cabin coming down the main aisle; that the next time she saw plaintiff was just before plaintiff came through the door and before she fell and that at this time plaintiff had her head turned to the left talking to her husband; that she came through the door "flying". It was witness Fisher's further testimony (in contradiction of plaintiff's testimony that she had opened the door herself) that the door to the galley was already open (revealing the step) as plaintiff approached and had not been opened by plaintiff. On cross-examination by plaintiff's counsel, the witness Fisher reiterated that the door was open at all times from the time she first saw plaintiff in the middle of the cabin until she fell; that the door was already open before plaintiff arrived at it.

In rebuttal plaintiff put Captain J. J. Frank, who was traveling as an additional crew member, on the stand. Captain Frank testified differently from either plaintiff or Mrs. Fisher in that he said he was walking

behind plaintiff's party and that as plaintiff reached the door it was partly closed.

Plaintiff attributed her fall to unfamiliarity with the step arrangement in the aircraft and to inadequate lighting. It was undisputed at the trial that there were no signs indicating a step beyond the door, but the evidence as to lighting was in conflict with plaintiff's evidence to the effect that the lighting in the galley was inadequate and with the evidence of the defense to the effect that the aircraft was well lighted throughout. In addition to the general lighting there was a step light in the step riser which was lighted and which cast illumination upon the galley floor at the step and which could be seen even with the door partly closed.

Defendant's first contention is that the court erred in sustaining ground 2 of plaintiff's motion for new trial. That ground reads as follows:

"(2) That the Court erred in giving its Instruction No. 6 offered by defendant over plaintiff's objections for the reason that there was no evidence to support the requested findings of fact in said instruction".

Instruction No. 6 was defendant's contributory negligence instruction and is as follows:

"The Court instructs the jury that it was the duty of the plaintiff, Marie Smith, in walking through defendant's airplane to exercise such care for her own safety as an ordinarily prudent person would use under the same or similar circumstances. If you find and believe from the evidence that defendant's airplane was unsafe in the particulars referred to in Instruction No. 1, if you so find, yet if you further find that plaintiff walked along the aisle of defendant's airplane and stepped through the open door, if you so find that the door was open, and into the galley or hostess working area before looking where she was stepping, if you so find, and if you further find that plaintiff in the exercise of ordinary care should have looked and should have seen the step mentioned in evidence before stepping through said door, so as to have recognized the danger to her of falling if she failed to heed its presence, if so, and if you find that plaintiff failed to look and see said step and recognize such danger to her, and if you find that such failure to look and see said step and recognize the danger was negligence, and if you find that such negligence directly contributed to cause the fall and injuries of which plaintiff complains, then plaintiff is not entitled to recover and your verdict must be for the defendant".

A reading of the instruction discloses that the findings of fact called for by the instruction as a prerequisite to a finding of contributory negligence were: (a) That the door was open; (b) That plaintiff stepped through the door before looking where she was stepping and failed to see the step and recognize the danger.

According to the testimony of Mrs. Fisher the door was open not only at the time plaintiff stepped through it but at all times while plaintiff approached it. And that "just before she (plaintiff) came through the door and before she fell * * * she appeared to be talking to her husband. She had her head turned to the left". Supplementing this testimony was the further evidence that the aircraft was well lighted throughout together with an operating light in the riser of the step itself.

■ From the above it is clear that there was ample evidence upon which to base the instruction if, as asserted by defendant under its Point 2, the testimony of Mrs. Fisher should have remained in the case. Defendant states that Point as follows:

"The Court erred in sustaining Point 13 of Plaintiff's Motion for a New Trial Because Defendant's Answers to Plaintiff's Interrogatories Were Not Judicial Admissions and Did Not Preclude Defendant from Introducing Testimony from the Witness Fisher Which Conflicted with the Answers".

As a part of the pre-trial discovery proceedings in this case plaintiff filed certain interrogatories which were answered under oath by defendant and read into evidence at the trial as admissions against interest by plaintiff as part of her case. The interrogatory and answer in question here is as follows:

Interrogatory No. 13: "At the time of the accident in question, was the door from the main aisle to the galley open or closed?" Answer No. 13: "When the accident in question occurred plaintiff had opened the door from the main aisle to the galley". As we have said, during the trial of the case in apparent contradiction to this answer defendant put Mrs. Fisher on the stand who testified unequivocally that the plaintiff did not open the door, and that the door was open at all times during plaintiff's approach to it along the main cabin aisle.

Plaintiff did not object to this testimony from Mrs. Fisher at the time it was offered, which was on the second day of the trial, although on the third day of trial plaintiff moved to strike this portion of the testimony of the witness Fisher on the same grounds set forth in Point 13 of the new trial motion. Defendant objected to the striking of this testimony and was sustained by the court.

In her new trial motion plaintiff again raised this issue under Point 13 thereof as follows: "(13) That the Court erred in allowing the testimony of the witness Fisher, in evidence that the door in question was open over plaintiff's objections for the reason that such testimony was in direct conflict with the sworn statement of defendant in defendant's answers to plaintiff's interrogatories which were in evidence, that the plaintiff had opened the door".

■ The net result of the lower court's ruling is to the effect that a party is conclusively bound by answers to interrogatories and cannot introduce evidence inconsistent therewith or contradictory thereto. In our opinion, this is not true.

■ It may be that the court's error in sustaining Ground 13 of the new trial motion came about because of a failure to draw the proper distinction between an admission against interest and a judicial admission. There is no question but that once having made a *true* judicial admission, the declaring party is estopped from denying or contradicting it. May v. May, 294 S.W.2d 627, Mo.App. But defendant's answer to plaintiff's interrogatory should be considered as *nothing* more than an admission against interest.

■■ It has long been the rule in Missouri that a party is not conclusively bound by his deposition answers, but on the contrary may explain them away or contradict them at the trial. Parmley v. Henks, 285 S. W.2d 710, 714, Mo.Sup.; Moore v. Ready-Mixed Concrete Co., 329 S.W.2d 14, 20, Mo. Sup., and by the very wording of the Missouri rules concerning interrogatories they are co-extensive with and can be used to the same extent as depositions. Rules 56.01 and 57.01 Missouri Rules of Civil Procedure, V.A.M.R. As said by our Supreme Court in the case of State ex rel. Williams v. Buzard, 354 Mo. 719, 190 S.W.2d 907, 910: "They (interrogatories) provide a less formal and less expensive way of ascertaining facts than by depositions."

Apparently the question is one of first impression in this State. However, the courts of other states have had occasion to consider it. One of the clearest cases is that of Ridley v. Young, 127 Colo. 46, 253 P.2d 433, decided by the Supreme Court of Colorado, en banc, 1953. In that case plaintiff Ridley was in defendant Young's car and was injured when the car overturned. In his answer defendant alleged that plaintiff was driving the car but in his answers to plaintiff's interrogatories, submitted before trial, admitted that he (defendant) was driving the car. At the trial, however, two witnesses introduced by defendant testified in such manner as to strongly prove that plaintiff had been driving the car with defendant asleep in the back seat. Defend-

ant had judgment and on appeal plaintiff alleged error on the part of the trial court in permitting the said witness to testify for the defense in contradiction of the defendant's answers to plaintiff's interrogatories. This is the same situation as we have here. In ruling that the trial court had not committed error in this respect, the Court stated, 253 P.2d at 434:

"First: *Where a defendant, in an action to recover damages for personal injuries answers interrogatories under Rule 33 R. C.P.Colo. and therein makes admissions against his own interest and thereafter does not appear upon the trial, and plaintiff offers the answers to the interrogatories in evidence; must the trial court reject the evidence of witnesses to the accident, who are called by counsel appearing for defendant, if the testimony of such witnesses contradicts the statements of defendants as contained in the answers to the interrogatories?*

"This question is answered in the negative. On behalf of Ridley it is contended that the answers made by Young to the interrogatories amount to judicial admissions, and that defendant Young is bound thereby and cannot contradict or impeach his own statements by offering witnesses to testify that his answers were false. * * *

"Answers made by a party to interrogatories submitted by his adversary are not evidence in a cause until introduced as such during the course of trial. When such answers are introduced in evidence they stand on the same plane as other evidence and may be treated as admissions against interest. * * * While the answers in the instant case were made by defendant Young they were offered as part of plaintiff Ridley's case just as any other statement against interest might have been received in evidence. * * *"

Other cases which hold that a party is not conclusively bound by his answers to interrogatories are Foster v. Montgomery Ward & Co., 24 Wash.2d 248, 163 P.2d 838, 843; Bochicchio v. Petrocelli, 126 Conn. 336, 11 A.2d 356, 357, 127 A.L.R. 457; Tighe v. Skillings, 297 Mass. 504, 9 N.E.2d 532; O'Brien v. Harvard Restaurant and Liquor Co., 310 Mass. 491, 38 N.E.2d 658; Safeway Trails, Inc. v. Smith, 222 Md. 206, 159 A.2d 823, 829, and Chaplain v. Dugas, 323 Mass. 91, 80 N.E.2d 9, 12.

Many years ago in the case of Smith v. Olsen, 92 Tex. 181, 46 S.W. 631, the Supreme Court of Texas said: "Cases which have come to this court show that the procedure in question is frequently resorted to for the purpose of entrapping the opposite party into an unguarded admission; and it doubtless occurs in many instances that a party in answering interrogatories, uses language against his own interest, which is capable of explanation, and which he ought to have the right to explain. Therefore, to make his answers conclusive would be to make the procedure a means of injustice, which would probably, in the long run, counteract the benefits which might be expected to follow from it". The logic of this statement is as valid at the present time as it was when first uttered.

Plaintiff cites from Missouri cases in support of her position. Except for the case of McCallum v. Executive Aircraft Co., 291 S.W.2d 650, Mo.App., the portions of the three cases quoted in her brief are merely definitions of the rule concerning judicial admissions, and in no way rule the point here in issue. Plaintiff quotes the following which appears on page 656 of the McCallum opinion.

"Under this point, defendant argues that the instruction does not require the jury to find that defendant's employee was authorized to make the representation as to airworthiness of the plane. There is no merit in this contention. The defendant, in answer to interrogatories submitted, stated that its employee was authorized 'to release said aircraft for flight and airworthiness respecting the aircraft propeller * * *.' This was a judicial admission of fact."

The above language by no means implies that defendant was conclusively bound by

its answer. Indeed the natural inference to be drawn from the language immediately following the above quoted portion of the opinion is that the defendant in that case could have disputed its answers to interrogatories had it chosen to do so. That language is: "It is not error for an instruction to assume a fact established by *undisputed evidence* and concerning which there is no real isssue". (Emphasis supplied)

The order granting a new trial is reversed and the cause remanded with directions to reinstate the verdict and enter judgment thereon for the defendant.

All concur.