**Rhonda Fay METTY,**
**Plaintiff-Respondent,**

v.

**SHURFINE CENTRAL CORPORATION**
**and Allen Canning Company,**
**Defendants-Appellants.**

**No. 14643.**

Missouri Court of Appeals,
Southern District,
Division Two.

July 29, 1987.

Motion for Rehearing or Transfer Denied
Aug. 17, 1987.

Application to Transfer Denied
Oct. 13, 1987.

528

William R. Bay, Bruce E. Beard, St. Louis, for defendants-appellants.

Cynthia O. MacPherson, Mountain Grove, for plaintiff-respondent.

PER CURIAM:

Plaintiff Rhonda Metty brought this action in the Associate Division of the Circuit Court of Wright County. In her initial pleading, plaintiff averred, inter alia, that "... in reliance of [sic] the Defendants' expertise and knowledge of food products handling and packaging for human consumption, [plaintiff] purchased four cans of green beans marketed by Defendant Shurfine Central Corporation and packaged by Defendant Allen Canning Company, with the intent to consume same...." The plaintiff further alleged that on July 20, 1983, she opened two of the cans of beans, warmed them in a pan and began consuming them. Plaintiff found "a large, dead half of a grasshopper in [a] spoonful of [the] beans she was about to consume," whereupon she became violently ill and experienced nausea and vomiting.

Plaintiff pleaded other damages, specifically that she was pregnant at the time she consumed the adulterated beans, and that her nausea and vomiting "continued unabated creating complications with the pregnancy resulting in a premature birth of the child she was carrying." It was further averred that plaintiff's child, because it was born prematurely, "was listed as a high risk infant and has required constant medical care since its birth." Plaintiff also alleged she "further suffered an extreme emotional distress which has manifested itself in the forms of anger, nausea, chagrin, fear and anguish and has not been able to consume any canned goods since July 20, 1983."

Upon trial to the court in the Associate Division, plaintiff had judgment in the amount of $2,500. Defendants jointly requested a trial de novo as provided by former § 512.180, RSMo Supp.1984, and jointly applied for a change of judge and a change of venue. The cause was transferred to Douglas County. Honorable Charles E. Brown II, an associate circuit judge, was assigned by our Supreme Court to hear the cause. Upon trial de novo, again to the court without the intervention of a jury, plaintiff had judgment in the amount of $1,850. The defendants appeal. Limiting our holding to the facts before us, we affirm.

Plaintiff, a female about 30 years of age, lived with her husband and three children in Mountain Grove, Missouri. At some time between June 20 and July 9, 1983, she bought four cans of green beans at a local grocery store.

On July 20, 1983, plaintiff opened two cans of the beans and put them in a pan on her stove. She added bacon bits, sliced onions and some bacon grease to the beans, "stirring and sampling" as she cooked them. As the plaintiff was about to conduct her fourth sampling, she saw, and inferably swallowed, part of a grasshopper.[1] The plaintiff became violently ill, vomited several times and thereafter suffered several episodes of retching.

The plaintiff developed other symptoms as well. She became nauseated "whenever [she prepared] a meal" or when she went to the store. When she saw canned goods advertised in a newspaper, plaintiff became nauseated. Sometimes plaintiff had to "force [herself]" to eat. She sought no medical attention because of these symptoms; she did not consult any physician concerning any emotional distress or anxiety. In August 1983, the plaintiff was hospitalized because of a urinary infection and what she described as a "blood infection." Hospital records of August 18 indicate " 'No history of any vomiting. No diarrhea.' " The plaintiff believed, and

presented some evidence designed to show that her fourth child was born prematurely because she had consumed the adulterated beans. This synopsis of the evidence is by no means complete, but in the view we take of this appeal, it is sufficient to a disposition of the case.

The defendants' principal point is that the plaintiff made no submissible case. Their point is clouded by their insistence that plaintiff's "theory of the case" was negligent infliction of emotional distress, a cause of action recognized and discussed in *Bass v. Nooney Co.*, 646 S.W.2d 765 (Mo. banc 1983). In arguing that plaintiff's theory of the case was negligent infliction of emotional distress, the defendants emphasize the wording of paragraph 11 of plaintiff's initial pleading, in which it was averred that "... Plaintiff further suffered an extreme emotional distress which has manifested itself in the forms of anger, nausea, chagrin, fear and anguish and has not been able to consume any canned goods since July 20, 1983."

The definitive cases hold that a party's "theory of the case" has reference to his pleaded cause of action or defense, or to some " 'matter essential to the rendition of the judgment.' " *State ex rel. Massman Const. Co. v. Shain*, 344 Mo. 1003, 1013, 130 S.W.2d 491, 495–496 (1939). The essential difficulty with the defendants' insistence on a particular "theory of the case" is that we have no formal pleading from which we can confidently or realistically determine what plaintiff's "theory of the case" was. This action was commenced in the associate circuit court, and at the time plaintiff's initial pleading was filed it was not required that such pleading adhere to any particular form, except in certain special cases with which we are not concerned. Section 517.050, RSMo 1978; *Kershner v. Hilt Truck Line, Inc.*, 637 S.W.2d 769, 771 (Mo.App.1982). Such being the case, we must affirm the judgment if it is correct under any reasonable theory supported by the pleadings and the evidence. *McCur-*

---

1. "Q. You saw the grasshopper before you put it in your mouth; didn't you?
   A. Yes.
   Q. As far as you know, you didn't eat any part of the grasshopper?
   A. Not that I can prove, no.
   Q. Okay.
   A. *I think I did.*" (Our emphasis.)

*rach v. Anderson*, 678 S.W.2d 459, 463[5–9] (Mo.App.1984); *Whelan's, Inc. v. Bob Eldridge Const. Co.*, 668 S.W.2d 244, 247[1] (Mo.App.1984); *Elliott v. West*, 665 S.W.2d 683, 690[4, 5] (Mo.App.1984); *Lohrmann v. Carter*, 657 S.W.2d 372, 376[1, 2] (Mo.App.1983).

As noted, the informality of the proceeding makes it difficult to characterize the action, but the third paragraph of plaintiff's initial pleading, set forth marginally * suggests that the pleader had in mind the implied warranty of merchantability created by § 2–314 of the U.C.C., codified as § 400.2–314, RSMo 1986, because § 2–314 contemplates a sale from a "merchant" who by definition has specialized knowledge. *See* § 400.2–104(1), RSMo 1986, and Official Comment 2 to that section. Moreover, the plaintiff's attorney has assured us very forcefully and unequivocally on oral argument that she proceeded on a theory of implied warranty. It is true, of course, that § 400.2–314 creates an implied warranty only when there is a sale by the merchant to the consumer; in order to recover under the provisions of Code § 2–314, a plaintiff must prove (1) that a merchant sold goods, (2) which were not "merchantable" at the time of sale, and (3) injury and damages to the plaintiff or his property (4) caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of the injury. J. White and R. Summers, Uniform Commercial Code § 9–6, p. 343 (2d ed. 1980). Obviously, there was no sale to the plaintiff by either of the defendants.

Nevertheless, the Uniform Commercial Code is not a comprehensive codification of commercial law, and non-code law is to be utilized to supplement the provisions of the Code unless the non-code law has been displaced by the particular provisions of the Code. Section 400.1–103, RSMo 1986; *see Pioneer State Bank v. Johnsrud*, 284 N.W.2d 292, 297 (N.D.1979). As a matter of policy, our courts have for many years held that in a sale of food for immediate human consumption there is an implied warranty that the food is wholesome, is fit for the purpose, and is of merchantable quality. And a buyer of packaged food products may recover from the manufacturer upon an implied warranty of fitness even though there is no express privity of contract between the manufacturer and the buyer. *Midwest Game Company v. M.F.A. Milling Company*, 320 S.W.2d 547, 550 (Mo.1959); *Carter v. St. Louis Dairy Co.*, 139 S.W.2d 1025, 1026[1, 2] (Mo.App.1940). This warranty existed in the absence of statute, as noted in *Midwest Game Company*, and in our view, enactment of the U.C.C. was not intended to diminish the consumer's protection against the sale of impure food. It may also be true that under § 402A of the Restatement (Second) of Torts, Shurfine is liable as a wholesale distributor. *See Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362, 365[2] (Mo. 1969).

In the final analysis, we might speculate about the basis for the trial court's finding, as the defendants have, but we do not really know the precise basis for its decision, the judgment is presumptively correct, and the defendants have the burden of demonstrating that the judgment is erroneous. *Massman Construction Co. v. Kansas City*, 487 S.W.2d 470, 478[6] (Mo. 1972); *Pallardy v. Link's Landing, Inc.*, 536 S.W.2d 512, 515 (Mo.App.1976); *Weston v. Great Central Insurance Company*, 514 S.W.2d 17, 21[1–3] (Mo.App.1974). We cannot say that the judgment was incorrect under any reasonable theory (or theories) supported by the pleadings and the evidence, and accordingly the judgment is affirmed.

All of the Judges concur.

---

* "That on or about July 9, 1983, the Plaintiff, *in reliance of* [sic] *the Defendants' expertise and knowledge of food products handling and packaging for human consumption,* purchased four cans of green beans marketed by Defendant Shurfine Central Corporation and packaged by Defendant Allen Canning Company, with the intent to consume same, from the Town and Country Supermarket in Mountain Grove, Missouri."