RAGLAND MILLS, INC.,
Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant–Respondent.

No. 15304.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 5, 1989.

David W. Ransin, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for plaintiff-appellant.

Rodney E. Loomer, Sherry A. Rozell, Turner, Reid, Duncan, Loomer & Patton, Springfield, Douglas L. Toering, Gen. Motors Corp., Detroit, Mich., for defendant-respondent.

HOGAN, Judge.

This is a products liability action based on the malfunction of a 1982 Cadillac automobile. The recovery sought by the plaintiff is limited to recovery for damage to the product itself and is sought on three alternative theories: (1) negligence; (2) breach of implied warranty of merchantability, and (3) strict liability in tort. The trial court directed a verdict for the defendant at the close of the plaintiff's case. The plaintiff appeals. We reverse and remand.

Preliminarily, some elementary principles bear restatement. The first is that if the plaintiff made a submissible case under any pleaded theory, this judgment must be reversed. *Holmes v. McNeil*, 356 Mo. 763, 767, 203 S.W.2d 665, 668 (1947); *Hammon v. Gentemann*, 423 S.W.2d 5, 7 (Mo.App. 1967); *Bowers v. Columbia Terminals Co.*, 213 S.W.2d 663, 667 (Mo.App.1948). This is true because the verdict was directed at the close of the plaintiff's case and before the plaintiff had elected and informed the court of the theory upon which it wished to submit its case. *Bean v. St. Louis Public Service Co.*, 233 S.W.2d 782, 785–86 (Mo.App.1950). And, in determining whether the plaintiff made a submissible case, we are obliged to consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, disregarding defendant's evidence except insofar as it aids the plaintiff's case. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 765[1] (Mo. banc 1984); *Krug v. Sterling Drug, Inc.*, 416 S.W.2d 143, 146 (Mo.1967); *Beshore v. Gretzinger*, 641 S.W.2d 858, 862 (Mo.App.1982). Another principle to be borne in mind, generally stated, is that answers to interrogatories constitute admissions, although a party is not conclusively bound by them. *Smith v. Trans World Airlines, Inc.*, 358 S.W.2d 91, 94–96[3][4, 5] (Mo.App.1962).

The facts are uncomplicated. On March 9, 1982, B.H. Ragland, as president of the plaintiff corporation, purchased a 1982 Cadillac "brand new" from Griffith Motors in Neosho, Missouri. The automobile was designed, manufactured, assembled, distributed and sold by General Motors. The vehicle was assembled in February 1982. It was shipped directly from the assembly plant to Griffith Motor Company in Neosho, on February 25, 1982. General Motors inspected "prototype parts [received] from the vendors, as well as the machines utilized to this part [sic]...." Routinely, a simulated road test and brake test is conducted on each vehicle, but the automobile in question "was not driven for a test drive."

Approximately 30 days after the automobile was purchased, it "crashed." Between the time the automobile was purchased and the time it malfunctioned on April 10, Ragland was the only person who used the vehicle. No repair work was done on the car during the time Ragland had it. Ragland installed a burglar alarm on the vehicle; the alarm was never activated and Ragland believed that no one had tampered with the car. The automobile had not been used to pull a trailer.

On April 10, 1982, Ragland had the automobile parked in his driveway. He started the motor. It ran perfectly. Ragland then "[t]ook [his] foot ... off the throttle, put it on the brake," and shifted the gear from "park" to "drive." As he shifted gears, the automobile was "idling just fine." When the gear was shifted to "drive," the automobile "went off ... like a rocket." Ragland "press[ed] on the brake ... hard—with everything [he] had," and tried to steer the car to a place of safety. The automobile went out of control, turned over and struck a nearby concrete wall. The plaintiff also had the evidence of another witness, who testified by referring to photographs. We do not have the photographs.

Two other aspects of the record should be noted. Deputy Sheriff Glore, who investigated the accident, testified that after the casualty occurred, Ragland's vehicle was towed to the Griffith Motor Company by one B.J. Cherry. It was also shown that by answer to an interrogatory propounded by the defendant, Ragland had admitted that he had the damaged Cadillac inspected at the Griffith Motor Company at Neosho. Upon trial, Ragland could not remember his answer to this interrogatory, but it was nonetheless given. At the close of plaintiff's evidence, as we have indicated, the trial court directed a verdict for the defendant.

In this court, the plaintiff has briefed two points. The first of those points, as stated, is that the trial court erred in directing a verdict because "Plaintiff was permitted to rely on the 'common experience' rule to establish the inferences of the existence of a defect in the subject vehicle and that such defect caused plaintiff's damages in that the application of such rule is not dependent as a matter of law upon the condition that direct evidence of the defect be primarily within defendant's knowledge and control." Plaintiff further argues that

its evidence "(1) removed the case from the realm of conjecture and speculation, (2) tended to exclude other reasonable causes of the incident for which defendant was not responsible, and (3) showed that such an accident does not ordinarily occur absent a defect." Thirty-two cases are cited in support of these two assignments of error. With deference to counsel, we shall undertake to resolve the merits of the appeal in a manner slightly different from that suggested by the briefs.

■ That branch of the law commonly called "products liability" is often spoken of as a unitary, coherent body of statute and precedent when in fact there are at least three common theories of recovery for damages sustained as a result of a defective product. In a "products liability" case, a plaintiff may seek recovery, as did this plaintiff, upon (1) a theory of negligence, *see, e.g., Commercial Distribution Center v. St. Regis Paper*, 689 S.W.2d 664, 670–71 (Mo.App.1985); Restatement (Second) of Torts § 395 (1965); (2) a theory of "strict liability," *see Keener v. Dayton Electric Manufacturing Company*, 445 S.W.2d 362 (Mo.1969); Restatement (Second) of Torts § 402A (1965), or (3) a theory of breach of warranty, either express or implied. *See Metty v. Shurfine Cent. Corp.*, 736 S.W.2d 527, 530[2] (Mo.App. 1987).

■ The plaintiff pleaded three of the theories just noted, and the question is whether it made a case upon any pleaded theory. It is our view that if the averments of paragraph 2 of Count II of plaintiff's petition are given reasonable intendment, they allege a breach of implied warranty.[1]

The opinion might be clearer, and most certainly would be longer, if we discussed and applied the proof to all plaintiff's pleaded theories. Nevertheless, we do well to remember that a judicial opinion is no

---

**1.** "That on April 10, 1982, a 1982 Cadillac Sedan ... was purchased by Ragland Mills, Inc. by and through defendant, Griffith Motor Company, and that said automobile was manufactured by General Motors Corporation and that the defendants impliedly warranted that said auto-mobile was reasonably safe for the general purpose for which it was ... sold, namely for use as a passenger automobile and that plaintiff's employees relied upon such warranty in purchasing said automobile."

place for a legal monograph and our duty to the parties is discharged if we determine that the plaintiff made a submissible case on any pleaded theory.

Section 2–314 of the Uniform Commercial Code, now codified as § 400.2–314, RSMo 1986, creates an implied warranty of merchantability, which includes an implied warranty that the goods sold "are fit for the ordinary purposes for which such goods are used." Section 400.2–314(2)(c). Comment 8 to Subsection (2) states in terms that "[f]itness for the ordinary purposes for which goods of the type are used is a fundamental concept of the present section and is covered in paragraph (c)." The reliable texts state that most merchantability cases are litigated under the "fit for ordinary purpose" criterion. J. White and R. Summers, Uniform Commercial Code § 9–8, p. 475 (3d ed. 1988). This court has held that in order to recover under the provisions of § 400.2–314, a plaintiff must prove (1) that a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury. *Metty v. Shurfine Cent. Corp.*, 736 S.W.2d at 530[2, 3]; White and Summers, Uniform Commercial Code § 9–7, p. 466. There is no doubt that an implied warranty of merchantability extends to automobiles in this jurisdiction. *Brazeal v. Craig*, 683 S.W.2d 329, 330 (Mo.App.1984); *Worthey v. Specialty Foam Products, Inc.*, 591 S.W.2d 145, 148–149[2, 3] (Mo.App.1979).

■ Further, there is no doubt in this case that General Motors is a "seller," and when privity, or "vertical privity" of contract is not required, a remote purchaser may sue the manufacturer for a breach of warranty. *Morrow v. Caloric Appliance Corporation*, 372 S.W.2d 41, 51–55 (Mo. banc 1963); *Groppel Co., Inc. v. U.S. Gypsum Co.*, 616 S.W.2d 49, 57–58[3][4, 5] (Mo. App.1981); 3 R. Anderson, Uniform Commercial Code § 2–314:127, p. 226 (1983). On the basis of the authority just cited, we conclude the defendant's implied warranty of merchantability extended to the plaintiff.

■ Did the plaintiff have proof of a breach of the warranty of merchantability? The parties have spent a good deal of time in their briefs arguing about the existence of a specific defect, and what they call a "common experience" rule. The essence of defendant's argument, which is directed to the sufficiency of the plaintiff's evidence to establish liability in tort, is that there was no proof of any specific defect in the Cadillac. A similar argument was advanced in *Worthey*, and while that case involved a used car rather than a new car, what the court held in that case is applicable here:

"The issue ... is not whether a specific defect caused the breach of this warranty, but, rather, whether or not the seller has sold goods that were not merchantable. The defendant [which asserted the breach of warranty] had the burden to produce substantial evidence that the used truck was not merchantable. The showing of specific defects in goods is obviously one way in which a buyer can establish that a seller has sold goods that are not merchantable and thus, breached this implied warranty. This, however, is not the only way in which a buyer may show a breach of this implied warranty. Circumstantial evidence may also be used.... (citations omitted)."

*Worthey v. Specialty Foam Products, Inc.*, 591 S.W.2d at 149; *see also Jacobson v. Broadway Motors, Inc.*, 430 S.W.2d 602, 606[3] (Mo.App.1968) (express warranty).

■ In the case at hand, the plaintiff had evidence that the vehicle was shipped directly from a General Motors assembly plant to Neosho on February 25, 1982. Ragland, as corporate president, purchased the vehicle "new" on March 9, 1982. Ragland was the only person who used the vehicle and it was subjected to no abnormal use. Between the time the vehicle was purchased and the time it malfunctioned it had not been repaired nor tampered with. On April 10, 1982, the automobile went out of control during normal use and struck a concrete wall. The vehicle was extensively damaged. The owner's testimony was that

the vehicle was worth about $25,700 before the accident and $8,700 after the accident. This evidence constitutes substantial evidence that the Cadillac was not fit for the ordinary purpose for which it was intended, and also constitutes substantial evidence of damage caused proximately and in fact by the defective nature of the goods.

 The real question on this appeal is whether the plaintiff gave notice as required by § 400.2–607(3)(a), which requires that the buyer, "within a reasonable time after he discovers or should have discovered any breach [of warranty] notify the seller of [the] breach or be barred from any remedy." The plaintiff cannot escape the notice requirement even though it chose to sue only the manufacturer. One of the important purposes of the notice requirement is to afford the seller an opportunity to arm himself for negotiation and litigation. White and Summers, Uniform Commercial Code § 11–10, p. 555. And, generally, though there is authority to the contrary, a buyer is required to give notice only to his immediate seller. Such notice, it is held, inures to the benefit of the manufacturer and is sufficient to serve the policy of the notice requirement. *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187, 205–7 (Colo.1984); *Firestone Tire and Rubber Co. v. Cannon,* 53 Md.App. 106, 452 A.2d 192, 195–95 (1982); *see also Goldstein v. G.D. Searle & Co.,* 62 Ill.App.3d 344, 19 Ill.Dec. 208, 212–13, 378 N.E.2d 1083, 1087–88 (1978).

 The plaintiff pleaded notice to "the defendant" by paragraph 4 of Count II of its petition. Did it prove a proper and timely notice? Giving the plaintiff the benefit of reasonable inferences to be drawn from the evidence, we believe it did. It is clear that any act or series of acts imparting notice of the buyer's claim is sufficient. White and Summers, Uniform Commercial Code § 11–10, pp. 558–59. In our case, the record shows that after the automobile was wrecked, it was taken to the premises of Griffith Motor Company. It was further brought out on Ragland's cross-examination that Ragland had a technical examination of the vehicle made on Griffith's prem-

ises on April 14, 1982. Such evidence is sufficient to demonstrate notice to the immediate seller—Griffith—that the plaintiff claimed some sort of breach of warranty. On the record before us, we believe the notice required by § 400.2–607(3)(a) was timely given and consequently plaintiff made a submissible case on its theory of breach of implied warranty. As we have indicated, other points have been tendered, but for the reason stated we consider it unnecessary to address them. Being convinced that a verdict should not have been directed for the defendant, we reverse the judgment and remand the cause.

PREWITT, P.J., disqualified.

FLANIGAN and MAUS, JJ., concur.