Kenneth PLUNK and Brenda Plunk, Plaintiffs–Respondents,

v.

HEDRICK CONCRETE PRODUCTS CORPORATION, Defendant–Appellant.

No. 18622.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 28, 1994.

Joseph C. Blanton, Jr., Blanton, Rice, Sidwell & Ottinger, Sikeston, for defendant-appellant.

Donald Rhodes, Bloomfield, for plaintiffs-respondents.

GARRISON, Judge.

Plaintiffs' suit alleged breach of an implied warranty of merchantability concerning concrete bricks which were used in the construction of their home. This appeal by Defendant follows a jury verdict in favor of Plaintiffs in the amount of $10,300. The issues relate primarily to the sufficiency of the evidence to support the verdict.

In determining whether a party made a submissible case, the evidence must be viewed in a light most favorable to that party, giving him the benefit of all inferences which may be reasonably drawn from the evidence. *Smith v. Allied Supermarkets, Inc.*, 524 S.W.2d 848, 849 (Mo. banc 1975); *Commerce Bank of Lebanon v. Berry*, 692 S.W.2d 830, 831 (Mo.App.1985).

Plaintiffs' home, with a brick veneer, was constructed in the fall of 1988. The bricks, which were concrete rather than clay, were manufactured and sold by Defendant. When Plaintiff Kenneth Plunk (Kenneth) purchased the bricks, Defendant only had enough in stock to fill one-third of the order. Defendant, however, manufactured more bricks and delivered them a week later. A brick-

layer commenced laying the bricks about one week after they were delivered.

Kenneth began noticing cracks in the bricks three days after the bricklaying was completed. Eventually, 53 cracks in the bricks were documented. There was also some discoloration by a white substance which seemed to come from the bricks themselves.

## I

In its first point relied on, Defendant contends that the trial court erred in overruling its motion for directed verdict at the close of all the evidence and its motion for judgment notwithstanding the verdict or in the alternative for a new trial on the issue of damages because there was "no viable evidence of the diminution in the value" of Plaintiffs' home and therefore there was insufficient evidence to support the verdict. In making this argument, Defendant correctly notes the general rule in Missouri that the measure of damages for injury to real property is the diminution in value test. *Sheridan v. Sunset Pools of St. Louis,* 750 S.W.2d 639, 641 (Mo.App.1988); *Tull v. Housing Authority of City of Columbia,* 691 S.W.2d 940, 942 (Mo.App.1985). There is an exception to the general rule, however, in that the cost of repair may be the measure of damages if it is less than the diminution in value. *Curtis v. Fruin–Colnon Contracting Co.,* 363 Mo. 676, 686, 253 S.W.2d 158, 164 (1952); *Tull v. Housing Authority of City of Columbia,* 691 S.W.2d at 942; *Casada v. Hamby Excavating Co., Inc.,* 575 S.W.2d 851, 858 (Mo.App. 1978). In cases involving a breach of implied warranty, the general measure of damages is the lower of the cost of repair or diminution in value unless the facts require a different standard. *Schulze v. C & H Builders,* 761 S.W.2d 219, 223 (Mo.App.1988).

Plaintiffs presented evidence that the cost of removing and replacing the bricks would be either $10,250 or $10,300.[1] Initially, they presented no evidence of diminution in value.

At the close of Plaintiffs' case, Defendant filed a motion for directed verdict alleging

that Plaintiffs had not made a submissible case on the issue of damages because they presented no evidence of diminution in value of the real estate caused by the condition of the bricks. At Plaintiffs' request, they were permitted to reopen their case to present additional testimony from Kenneth. He initially testified outside the hearing of the jury at the request of Defendant's attorney who said, "Well, I think we ought to probably do it first outside the hearing of the jury to see if he has any idea. I mean, I don't know that he has any knowledge of the value of the real estate." The following occurred on direct examination:

Q. Okay. Now, Ken, do you have an opinion as to the fair market value of yours and Brenda's house at the time it was built in December of 1988—

A. Around ninety thousand—

Q. Just a minute—and if the brick, assuming the bricks around it were not defective, not cracked, and not discolored?

A. Around ninety thousand.

Q. Ninety thousand dollars?

A. Yes, sir.

Q. Okay. Do you have an opinion as to the fair market value of your house at that time with the bricks being defective, cracked, and discolored?

A. Around eighty thousand.

On cross-examination Kenneth testified that he was not a realtor; he had placed the house on the market a few months after it was built for $79,900 but received no offers; and no one had told him what the house would be worth without cracks and discoloration in the bricks. Defendant did not object to Kenneth's testimony, his qualifications or competency to express the opinions. As a part of a discussion about whether Kenneth's testimony should be presented to the jury, Defendant's attorney said:

It's kind of irrelevant since there's now evidence in as to diminution in value, and it's the same, essentially, as what he's talking about for the repairs, so he's got his repair evidence in. I think he can argue that to the jury.

as the evidence about cost of repair and was more than any evidence of diminution in value.

---

1. In the instant case there is no issue about the fact that the jury verdict of $10,300 was the same

Nevertheless, Kenneth did testify in the presence of the jury and gave the same opinions of before and after values without objection from Defendant. On cross-examination, the following occurred:

Q. Mr. Plunk, did anybody ever offer you the figure of $80,000.00 for your house?

A. No, sir.

Q. Okay. Can you tell me what knowledge you have about market conditions that leads you to believe that the fair market value was $80,000.00?

A. Not really.

Q. What about the higher figure if the house had been without the cracks and the discoloration? You don't have any knowledge, really, as to what it would be worth, do you?

A. Not really.

Defendant also failed to object to this testimony or ask that it be stricken. It argues, however, that Kenneth's testimony was deprived of probative value by the cross-examination, and as a result there was no evidence of diminution in value to support the verdict.

In support, Defendant cites *Carmel Energy, Inc. v. Fritter*, 827 S.W.2d 780 (Mo.App. 1992), which states the general rule that a property owner, even though not an expert, is competent to testify to the reasonable market value of his land. Continuing, however, the court said:

> However, when an owner's opinion is based on improper elements or foundation, his opinion loses its probative value. Or, where the basis for a test as to the reliability of the testimony is not supported by a statement of facts on which it is based, or the basis of fact does not appear to be sufficient, the testimony should be rejected. Judicial liberality in permitting an owner to testify as to his opinion of the amount of the loss does not allow an unrestricted right to engage in guesswork. [Citations omitted.]

*Id.* at 783. *See also Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d at 855.

The flaw in Defendant's argument is that, as pointed out by Plaintiffs, there was evidence of diminution in value. This is because Kenneth's testimony was admitted without objection.

■■■ The trial court has discretion in determining whether sufficient facts have been stated to warrant the receipt of an opinion from a lay witness. *See Pickett v. Cooper*, 354 Mo. 910, 192 S.W.2d 412, 417 (1946); *Varley v. General American Life Ins. Co.*, 664 S.W.2d 682, 683 (Mo.App.1984). There is, however, no certain formula in determining the competency of a witness to give an opinion. *Earney v. Clay*, 516 S.W.2d 59, 66 (Mo.App.1974). If it appears from the evidence that an owner's testimony of value is based upon an improper standard, then the trial court "may" exclude or strike the owner's opinion, and if the opinion is "erroneously received," the court of appeals "may" reverse for want of substantial evidence of damage. *Casada v. Hamby Excavating Co., Inc.*, 575 S.W.2d at 855.

■■■ It is true that in cross-examination before the jury, Kenneth could not say what knowledge he had of market conditions which led him to believe the after value was $80,000, and that he really had no "knowledge" as to what the house would be worth without the cracks and discoloration. It is, however, incumbent upon a party to object, in the trial court, to the competency or qualifications of a witness to express opinions. *See Earney v. Clay*, 516 S.W.2d at 66. If Defendant believed that Kenneth's testimony had been shown on cross-examination to be incompetent and inadmissible because not based on knowledge and therefore of no probative value, then it had the responsibility to bring the matter to the trial court's attention and ask that it be stricken. *Board of Public Bldgs. v. GMT Corp.*, 580 S.W.2d 519, 523 (Mo.App. 1979). Its failure to do so constitutes a waiver of the objection.[2] *Id.; In Interest of M.S.*, 830 S.W.2d 540, 543 (Mo.App.1992); *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 878 (Mo.App.1985); *Matter of F.Z.*, 612 S.W.2d 904, 905 (Mo.App.1981).

---

**2.** We need not decide whether this portion of Kenneth's testimony should have been stricken if

Defendant had objected and requested that relief.

In fact, after Kenneth's testimony outside the hearing of the jury, Defendant's counsel agreed that "there's now evidence in as to diminution in value...."

■ The fact that a motion for directed verdict or motion for judgment notwithstanding the verdict is later filed does not avoid the effect of failure to object. In *Eichelberger v. Barnes Hospital*, 655 S.W.2d 699 (Mo. App.1983), one of the issues was whether the trial court erred in failing to sustain defendant's motion for directed verdict on the theory that plaintiff's evidence, as a matter of law, was insufficient to meet her burden of proof. The Eastern District held that defendant's argument was not well taken because it had not objected to the competency of the witness and the validity of her testimony at trial. *Id.* at 705. The same result applies in the instant case. The first point is, therefore, denied.

## II

■ Defendant's second point relied on is as follows:

> The Associate Circuit Court erred in admitting evidence of other allegedly similar occurrences involving appellant's bricks incorporated in other structures.

This point does not comply with the requirements of Rule 84.04(d), V.A.M.R. Three things are required with respect to points relied on under that rule: (1) a statement of the action or ruling complained of; (2) why the ruling was erroneous; and (3) wherein the evidence, the lack of it, or other matters supports the position the party asserts the trial court should have taken. *Carrier v. City of Springfield*, 852 S.W.2d 196, 198 (Mo. App.1993). In this instance, the point does not specify wherein and why the ruling was erroneous. An insufficient point relied on preserves nothing for this court's review. *Bentlage v. Springgate*, 793 S.W.2d 228, 231 (Mo.App.1990). *See also White v. White*, 846 S.W.2d 212, 214 (Mo.App.1993). This point is, therefore, denied.

## III

■ In Point III, Defendant contends that the trial court erred in overruling its motion for directed verdict at the close of all the evidence and its motion for judgment notwithstanding the verdict or in the alternative for a new trial on the issue of liability. It argues that Plaintiffs' evidence on that issue was inadequate as a matter of law because there was no proof that the bricks failed to meet industry standards. To the contrary, Defendant argues that the only evidence on the point indicated the bricks did comply with those standards. Defendant cites no authority for its apparent proposition that proof of variance from industry standards is required to make a submissible case on breach of an implied warranty of merchantability.

■ The general rule seems to be that proof of compliance with industry or government standards does not prevent recovery in an action for breach of an implied warranty of merchantability unless noncompliance with the standard itself constitutes the breach of warranty. *See Reid v. Eckerds Drugs, Inc.*, 40 N.C.App. 476, 253 S.E.2d 344, 349 (1979) (proof of compliance with government standards is no bar to recovery on a breach of implied warranty of merchantability theory); *Malawy v. Richards Manufacturing Co.*, 150 Ill.App.3d 549, 103 Ill.Dec. 355, 365, 501 N.E.2d 376, 386 (1986) (evidence that a product complied with industry standards is not a defense to an action based on breach of an implied warranty unless "noncompliance with the standard itself constitutes the alleged breach of warranty"); and *Anderson, Uniform Commercial Code*, § 2–314:180 at 268–69 (1983).

■ Additionally, it is of significance to this issue that the pertinent time period in determining merchantability of the goods is at the time of the sale. *Ragland Mills v. General Motors*, 763 S.W.2d 357, 360 (1989); *Metty v. Shurfine Central Corp.*, 736 S.W.2d 527, 530 (Mo.App.1987). Plaintiffs' theory was that when the concrete bricks were sold and incorporated into the house they were not fully cured and therefore had not developed sufficient strength for use in the structure. The evidence concerning whether the subject concrete bricks complied with industry standards came from Plaintiffs' expert, a professional engineer. He testified that he

had some of the bricks from Plaintiffs' home tested and they did comply with applicable ASTM standards for compression strength and cold absorption. Defendant points to this evidence in support of its argument that the bricks used on Plaintiffs' home did comply with industry standards.[3] These tests, however, were not made until approximately two years after the bricks were manufactured and delivered by Defendant. The same engineer testified that when the bricks were tested they were only marginally above the minimum standards set by ASTM and that, in his opinion, when the bricks were delivered and installed they were not adequately cured and would not have met the standards for compressive strength.

Lack of merchantability may be proven either by showing a specific defect in goods or by circumstantial evidence. *Ragland Mills v. General Motors*, 763 S.W.2d at 360; *Worthey v. Specialty Foam Products, Inc.*, 591 S.W.2d 145, 149 (Mo.App.1979). The test is whether the goods "are fit for the ordinary purposes for which such goods are used." *Id.*; § 400.2–314(2)(c), RSMo 1986. Under Plaintiffs' theory and the facts of this case, the jury could have found that the bricks were unmerchantable when they were sold, even though they may have later met the standards referred to. Point III is denied.

The judgment is therefore affirmed.

PREWITT and CROW, JJ., concur.

---

3. Defendant, in its brief, argues that it submitted evidence that tests were conducted by Anco Testing Laboratory, an independent testing concern, "during the Fall of 1988, the time period when Hedrick manufactured the bricks sold to the Plunks," and that "Anco determined that the Hedrick bricks it tested satisfied the applicable ASTM standards for absorption ... and compression...." The brief does not indicate where this statement is supported in the record other than a reference to exhibit "S". Exhibit S was not filed with this court and the index to exhibits contained in the transcript refers to it as a "photo."

The only reference in the record we are able to locate concerning any other testing is the following testimony from Defendant's witness, Gene Hungerford, an employee of the Missouri Concrete Masonry Council, who testified: "When Mr. Hedrick joined our organization, his products were tested according to ASTM standards by Anko Testing in St. Louis, and they met all the standards of strength and stress and moisture, etc." We are unable to locate any information in the record concerning when that testing was conducted or the age or types of bricks tested.